May it please the Court. Good morning, Your Honors. Eric Larson on behalf of Appellant Clavano. Your Honors, in this case, reversal is required if it was likely that the trial judge's inquiry and comments caused certain jurors to abandon their views in favor of returning a unanimous verdict. Well, doesn't the ADEPA standard apply here, though? Don't we have to find that it wasn't a reasonable application of that particular standard? Yes, Your Honor. So there's an extra layer of deference there. Absolutely. Long ago, the U.S. Supreme Court in Lowenfield recognized that merely inquiring into the numerical division of the jury is coercive. In this case, the trial judge went far beyond that. The trial judge affirmatively inquired into how many votes were for guilt versus how many for acquittal. After learning that it was four for not guilty, the Court ordered further deliberations. Numerous cases have recognized under those circumstances that that's highly coercive. Inquiring into the numerical breakdown in that manner has been universally condemned by federal and state courts alike. It's never been approved, to my knowledge, in any case ever. And the coercion didn't stop there. One juror, when the Court asked, well, would it be possible if I sent you back, is it possible you'd reach a verdict? And one juror volunteered, well, Your Honor, eight of us could. And then, obviously, based on the prior inquiry, the Court understood exactly which eight that juror was referring to. And the Court then said, you know what, I'm going to order you to resume deliberations, and I want you to make an attempt, and quote, I want you to make an attempt by all of you, I'm talking about, an attempt by all of you, after that comment. That was highly coercive. There's no doubt that the jurors, minority jurors, had to have felt pressured. In this case, the Court also erred, the trial Court also erred, in failing to give an offsetting cautionary instruction, which, according to this Court's precedent, has been deemed essential. So we have all these factors that occurred during the colloquy. Then we have the additional factors in the record that demonstrate coercion, which include the fact that just one hour after this inquiry and comments from the trial Court judge, the jury returned unanimous verdicts. All four minority jurors joined the majority and returned unanimous verdicts against both defendants. This was after 13 1⁄2 hours of deliberations. And not only that, but the jurors reported that they had been deadlocked since day one. And for the jurors, the minority to have flipped so quickly, all four of them, to the majority, strongly suggests coercion. So those are the primary factors that I. What about the fact that the split was 8-4, it wasn't 11-1? In some of the cases, talk about the degree of the split. It's more coercive when it's 11-1. And here, it's not quite even, but it's not that far off of an even split. Doesn't that diminish the likelihood of coercion? Your Honor, I think that factor really cuts both ways. I think when it's 11-1, the one juror is under more pressure from the majority. It's obviously harder to be the one against 11. But on the other hand, when you have four jurors that join the other eight so quickly, that also is, in my mind, strong evidence that the jury was in fact coerced. If you get four to flip so quickly after they've been deadlocked from day one for 13 1⁄2 hours, and so I really believe that factor cuts both ways. It's undisputed that the identity of the four was not disclosed, right? Identities were not disclosed. That's true. Yeah, that is correct. And then I would also like to point out that the record in this case also includes affirmative evidence that the jury felt coerced. After the verdicts were returned, the jurors reported that based on the court's inquiry, they felt pressured to return a verdict. That's indicia of pressure. That's the fourth factor recognized in Weaver v. Thompson. They said they felt spanked by the trial judge's comments. And we need to get going. I don't know if that was a majority or minority voter who made that comment. No, Your Honor, the record does not indicate which. So it could have been one of the eight who felt spanked as far as we know. Yes, it could have been, and I would suggest that all 12 felt spanked, and they felt spanked to return a verdict. And under these circumstances, when it's eight in the majority and four in the minority, and all 12 are pressured into returning a verdict, then, you know, it's just simple method. It's more likely that the four are going to have to join the eight if they're going to return a verdict, and that's exactly what happened in this case. So I think, you know, regardless of which one felt spanked, I feel like they all felt spanked, and they all felt pressured. And the judge, knowing, having heard the evidence, knowing exactly what the evidence was and knowing exactly that the majority was voting for guilty, urging, strongly urging, or almost compelling a verdict, compelling is too strong of a word, but pressuring them to return a verdict under these circumstances is pressuring the jury to return a guilty verdict. And I believe the case law bears all that out. Has the Supreme Court adopted the four-factor test that Weaver announced in determining the level of coercion? I don't believe the Supreme Court has expressly adopted that test, but I believe within the case law it applies those same factors throughout the case law. I don't believe it is affirmatively ever adopted that test. That test has been applied, obviously, in this circuit. The word of measure under AEDPA, Supreme Court clearly established law, right? Yes. And are you saying that the Supreme Court has employed those same four factors in other cases, or is that something that's been refined by this court? I believe that's something that's been more refined by this court. But the Supreme Court, I mean, the Supreme Court's gone farther than even that in Lowenfield. They're reversing federal cases, granted, under the supervisory powers of the court, but federal cases are being reversed just by inquiring into the numerical split, absent all the other things that happened in this case. So the Supreme Court is very favorable, applying a very favorable standard. Except the court has also made it clear that in those cases they're applying the supervisory power, not the constitutional standard. So I guess my question is what level of specificity in the Supreme Court jurisprudence with respect to the Constitution is there on coercion, other than the general rule that you can't coerce the jury? Is there something more specific that we should measure the facts here up against in Supreme Court law? Yes. Well, I guess the best guidance that really this court would have in applying the Supreme Court is in Lowenfield versus Phelps. And within those cases, it does ultimately become a factual determination, and we're looking at the totality of the circumstances. And so I think it's difficult to apply one rule to every factual situation when you're applying a totality of the circumstances, which is similar to the totality of the circumstances as applied in many other contexts repeatedly by the U.S. Supreme Court, Miranda, search and seizure. So under a totality of the circumstances test. Yeah. Let me ask you, if you looked at the Ninth Circuit's jury instructions booklet, you know we have one. Yes, I know you have one. And frankly, Your Honor, I practice primarily state law. I could have answered most of your questions in the last argument, but I'm unfortunately not as familiar with. Well, let me read this to you. I looked at those model instructions that are put out by our court and kept up to date. And this is the 2010 printing. Here's a comment under 7.7 deadlocked jury. The committee recommends caution when considering whether to give a supplemental instruction, sometimes known as the Allen charge, to encourage a deadlocked jury to reach a verdict. Then you go down further in those notes, page 124, and it states, if the trial judge gives an Allen charge after inquiring into the numerical division of the jury, the charge is per se coercive and requires reversal, cites the case Agiboy, 961 Fed 2nd at 893-94. And it goes on, quote, even when a judge is inadvertently told of the jury's division, reversal is necessary if the holdout jurors could interpret the charge as directed specifically at them, that is, if the judge knew which jurors were holdouts, and each holdout juror knew that the judge knew he was the holdout. And they cite another case here, United States v. Tsai Chou, 725 Fed 2nd, 530-534. And then if you do give an Allen charge, then there's another instruction, or part of what you ought to give is telling the jurors they're not to give up their views, if they're convinced that they're correct but they shouldn't hesitate to review, review the evidence, but not to, in a sense, succumb to any pressure. I'm just paraphrasing. Yes, Your Honor. You know about this? Yes, and I believe all of those provisions were violated. I'm familiar with the Allen charge. Yeah, the Allen charge, but you haven't looked in this. These are supposed to be instructions. So those are comments. So it's a no-no to find out or inquire as to what the division is. Yes, it absolutely is. And that's one thing you don't want to ask. Right. It's even worse if it's inadvertently it's a problem. It's even worse to affirmatively ask is what occurred in this case. Remind me, was there an objection at trial at the point that the court delivered its instruction to the jury? No, there was not. And under Loewenfeld, the court also pointed out that the defense counsel had not objected to the supplemental instructions or to the polling, which the court found was an indicator that maybe the coerciveness was not so obvious. Why wouldn't that create an issue for you here? Well, Your Honor, this all happened fairly quickly. And I would point out that the attorney general in the state court proceedings and in the federal district court and before this court has never asserted forfeiture or a waiver. I would also point out that although counsel may not have realized the magnitude of what had just occurred on the fly, he did very much file a motion for new trial, which on that very basis, which was denied, he also sought disclosure of the jury information so he could develop a further record as to exactly what happened. And that motion was also denied. So counsel did recognize it within while the trial court was still proceeding and absolutely filed a motion for new trial on that basis. Unless you have any further questions. Thank you. Good morning, Your Honors. May it please the court. Deputy Attorney General Theodore Cropley for Respondent. Counsel, if this were a case in federal court on direct appeal, it would be a pretty easy win for the defendant. But we have to look through the input lens. And I wonder if you would focus on the Supreme Court cases primarily and tell us why the California Court of Appeal was not unreasonable in applying those cases here. Absolutely, Your Honor. And Your Honor is correct. If this was a direct appeal in this court, this would be an entirely different question. As Your Honor had read the Ninth Circuit, your instructions and the comments. However, as this is a case on federal habeas, what must look at is the state court here, the state court of appeal, identified the correct question, the correct constitutional question. Was the supplemental instructions given by the trial court, were they coercive? And we have U.S. Supreme Court authority that tells courts how to make this determination. And that is, again, the Lohenfeld v. Phelps, when it talks about to determine whether an instruction is coercive. That's a supplemental instruction, a supplemental charge. The state court must consider all of the circumstances and look at this instruction in context. And so certainly the trial court should not have asked the breakdown of the jury or which way the jury was leaning. But that's not a per se constitutional violation. The question asked each juror, do you agree or disagree? There was a colloquy with each discussion with each juror. Only a few of the jurors, it was in front of the jury panel. But the colloquy with the court, a few of the jurors did have discussions with the court. And what's important is there was at least two that were somewhat equivocal about whether further deliberations would be fruitful. The colloquy did not include asking any individual juror his or her view on the verdict, but only about whether further deliberations would be useful. Is that correct? That's correct. The court did not identify which of the four jurors were in the minority and which of the eight jurors were in the majority. And it should not have asked that question. But what it comes down to is that's just one of the factors that a court must look at in determining whether the instructions were coercive. And under Lowenfeld, isn't that a pretty important factor? The court first says that Brasfield, which is under the supervisory power, this would have been per se reversible. But then it says that's different because it's not constitutional. But then it goes on to say that Brasfield, nonetheless, is instructive as to the potential dangers of jury polling. And then it goes on to talk about how the inquiry in Lowenfeld was to how they stood, but there was no question in whether further deliberations might assist. But I don't believe, or maybe I'm wrong, that there was a question about which way they were split, whether it was pro-acquittal, pro-conviction. And there's some warning language in Lowenfeld that suggests that might have been a no-no had the court done that. That's correct, Your Honor. And the reason why that, again, is discouraged is because of the potential that that would lead a supplemental charge to be coercive. But again here, the state court addressed that factor head-on. The court, again, under U.S. Supreme Court authority, needs to recognize the circumstances and take this supplemental charge in context, and it fully did. The state court of appeals opinion fully addressed that the trial court asked what the numerical division was, then asked how the court was limiting, and it should not have done that. But it took a look at the other circumstances as well. Here I think it's important to examine the very neutral language of this charge. Not really an Allen charge at all, but really the trial court was telling the court, okay, you know, each one of you, all of you, let's just go back, look at the instructions again, look at the evidence again, and then we'll see where we are. And here it's hard to think of a more neutral instruction, whether the court knew the numerical split or which way the jury was leaning. The court gave a very neutral instruction. And the court of appeal, in making its finding that this instruction was not coercive, did look at all of the factors. Not only the eight to four factor, but the fact that the nature of the deliberations and the nature of the presentation of evidence was somewhat chopped up. It wasn't a very smooth trial. And so the court, with its neutral charge, and giving the equivocation of at least two jurors that some further deliberation may be fruitful, the abuse of discretion here would have been if the court declared a mistrial at this point. What about the fact that they came back within one hour and four votes changed after 13 hours of deadlock? Doesn't that strongly suggest something pretty significant happened? Well, Your Honor, I would say no. At any time a jury is deadlocked and they're given some supplemental instructions, there's an amount of pressure on the jury. But here, there is still an hour passed, that there's still deliberations that took place. Did they ask for any evidence? Did they ask for any readbacks? Not during this initial hour, this final hour. It seems to be there was deliberation taking place. So this hour, I think, tends more to show that there was further deliberation. This is very unlike the case Petitioner relies on, Jimenez v. Myers, where in that case the court took several polls. The jury said it was hopelessly deadlocked. Counsel agreed that the court should ask for a mistrial. Yet the trial court nevertheless took several polls and when it saw that there was movement in the jury, the final poll was 11 to 1, and the court then said, well, go back there and let's see if there's any more movement. That, I believe, is coercive because that's clearly directed to the lone holdout juror. However, here we have an entirely different scenario. Again, the guidance we get from the U.S. Supreme Court is just to take into account these circumstances. The court here took one poll. It was 8 to 4. The court gave a very neutral supplemental instruction telling the jury only just go back, look at the instructions again, look at the evidence again, see where we're at. Is there any case you can cite where the trial judge did what was done here, asked for the breakdown, asked for the breakdown with respect to how many for acquittal, how many for conviction, and then sent them back where a court has said, nonetheless, that's not coercive? No, Your Honor, because again, usually trial courts can catch themselves before this happens. It's not a usual circumstance. This is certainly an outlier. There's no case with that fact pattern where it's been upheld? Not that I'm aware of, Your Honor. Indeed, in the Locks case, this court distinguished the situation by saying the trial judge did not ask whether the jurors and the majority were for acquittal or guilty and did not follow the inquiry with imploring them to come back. Correct, Your Honor. Again, those are further circumstances that a state reviewing court has to take into consideration. But again, speaking about the further hour of deliberations, in Jimenez v. Myers, it was several minutes after that supplemental charge that they came back with their verdict. Here, the hour lends some credence to the fact that the jury did engage in some further deliberations. And Lohenfeld was a pretty quick turnaround, too. Absolutely. So that the time period after the charge is given can be relevant, but I think here the hour that it took in further deliberations lends more towards the non-coercive nature of this particular neutral instruction. Here they said the information we got is that they were really deadlocked right after the first hour of deliberations, way at the beginning, and we had these big gaps. But, you know, I'll just tell you this. From my experience, unless you're a real mean guy, jurors want to feel as if what they do, that the result they bring about is one that the judge would approve of. And so when you bring them out and you find out what the breakdown is, and of course the judge has got a little bit of an interest because they want to get on with other matters in their calendar. They spend time on this. And you had a number of people here say that they didn't think further deliberation would make any difference and all the rest of it. But after the judge talks to them and sends them back, then of course they're going to sense that, well, this judge wants us to get this case decided. And so the judge has really got to be very careful about those things. And that's why I think in the state court system, you emphasize to the jurors that they're the triers of the fact. And that's their sole responsibility, and not the responsibility, not the job of the judge. The judge's job is to tell them what the law is. So what I think, seems to me, that they've been at it, deliberated for a long time. Of course it was broken up, but that occurs quite often. And that questioning them one by one, or getting their views as to whether it's hopeless or not, there is some degree of coercion there. And certainly, Your Honor, that kind of brings us down, and if I just have a minute to wrap up, brings down to the fact that this is a case on federal habeas. And under AEDPA, the question really is, was the state court's decision finding this supplemental charge was not coercive, was that reasonable? And if jurors could disagree on whether this charge was coercive or not, then this appeal must be denied, because the standard under AEDPA is, again, the error in the state court must be obvious and indisputable. And here, there was no obvious and indisputable error. Again, even the attorneys here did not object at the time. So even if later on they said, well, maybe this should have objected, it was not at that time obvious and indisputable. Here, the instruction was neutral and non-threatening. The court of appeal... You know, you're not going to get too many attorneys that are going to object, because when you're at the end of a trial, they all feel like they're going to win, see? So they know it's 8-4, and they probably thought, well, you know, 8 in my favor, 4 in favor of the other side. Correct, Your Honor, but when looking at, again, the factors, the court of appeal took into consideration in making its determination, under the U.S. Supreme Court, you know, the Supreme Court has not adopted the four-factor test. It simply stated in Lowenfeld that a state court must look at all the circumstances and look at this instruction in context. Here, the court did. So it got all the circumstances, good and bad, and came to a reasonable conclusion that this instruction did not coerce the jury. Reasonable minds could disagree, certainly, but the point is, since reasonable minds could disagree, this particular charge or this particular conviction should not be overturned on habeas. Again, the state court of appeal took into account everything that happened, came to a reasonable conclusion that the supplemental charge was not coercive, and that really that should be the end. Unless the court has any further questions, I'll be happy to speak. Thank you. Thank you. If I may, just briefly, Your Honors. AEDPA certainly imposes a high bar, but it does not impose an insurmountable bar. As the Attorney General has conceded, no case has ever held that what occurred in this case was not coercive, and I would urge this court not to be the first. Thank you, Your Honors. Thank you. Well, you know, we've done a lot in the past 40, 50 years to minimize the importance of the Great Writ. I agree. Much to my chagrin. Chagrin? That would be a little more than that. Okay, thanks. Thank you again.
judges: Chen, Pregerson, Graber